2020 IL App (1st) 190999-U

No. 1-19-0999

Order filed May 14, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| KASHIF M. ABDUL-AZIZ, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission. |
| v. | ) | |
| | ) | |
| THE HUMAN RIGHTS COMMISSION, THE | ) | No. 2016 CH 3120 |
| DEPARTMENT OF HUMAN RIGHTS, and IMPACT | ) | |
| BEHAVIOR HEALTH PARTNERS (formerly | ) | |
| HOUSING OPTIONS FOR THE MENTALLY ILL, | ) | |
| EVANSTON), | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE BURKE delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The Illinois Human Rights Commission did not abuse its discretion by sustaining the Illinois Department of Human Rights' dismissal of petitioner's discrimination charge.

¶ 2    Petitioner Kashif M. Abdul-Aziz appeals *pro se* from a final order entered by the Illinois

Human Rights Commission (Commission) sustaining the Illinois Department of Human Rights

(Department) dismissal of his charge of housing discrimination against Impact Behavior Health Partners formerly Housing Options for the Mentally Ill, Evanston (Impact Behavior Health Partners) pursuant to the Illinois Human Rights Act ("Act") (775 ILCS 5/1-101, *et seq.* (West 2016)). Petitioner alleged that Impact Behavior Health Partners discriminated against him based on his race and religion when he received a 10-day lease termination notice and another tenant, Juan Gallaher, similarly situated outside the protected class did not receive a notice. The Department dismissed petitioner's charge for lack of substantial evidence. Petitioner appealed to the Commission and they sustained the Department's decision. Petitioner has appealed the Commission's order. We affirm.

¶ 3    Petitioner filed a housing discrimination complaint, alleging Impact Behavior Health Partners subjected him to discriminatory rental terms and conditions based on his race ("black") and religion ("Muslim"). He alleged that Gallaher accused him of battery, but asserted that Gallaher threw an object that hit him. Furthermore, petitioner stated that on June 21, 2016, Impact Behavior Health Partners served a notice of lease termination to him without conducting any investigation and did not terminate Gallaher's lease.

¶ 4    The Department conducted an investigation, including interviews with petitioner, his guests, and employees of Impact Behavior Health Partners. On September 13, 2016, the Department issued a "Final Investigation Report" that summarized several interviews conducted by the Department's investigator, as well as documents submitted to the investigator.

¶ 5    The report reflects that, in a June 28, 2016 interview, petitioner stated he resided in a studio apartment subleased from Impact Behavior Health Partners. On June 20, 2016, he had guests visiting and, between 1:30 and 3:30 a.m., there was a "very loud knocking and banging" on his

door that he ignored. When the banging continued, petitioner opened the door and was hit by an electronic device in the face that was thrown by Gallaher. Petitioner had never previously met Gallaher. During the encounter, petitioner made statements about Gallaher's sexual orientation. Petitioner wanted to grab Gallaher but was held back by his guests, Angela Jones and Brian Tucker. Petitioner slammed the door shut. He later left the apartment with Jones when he saw Gallaher going to walk his dog. Petitioner called Impact Behavior Health Partners around 11:00 a.m. to report the incident but no one answered so he left a message. No one called back.

¶ 6       Petitioner stated that on June 21, 2016, there was an eviction notice posted on his door, which stated he violated his lease with "violent, threatening or abusive behavior by a resident or guests of resident, towards another individual." He went to the management office for an explanation of the notice and was told to wait. As he waited, the police arrived and arrested him on battery charges. He was released from custody on June 23, and was not interviewed by anyone in regard to the incident. Petitioner stated he had a clean record and denied any violations of his lease.

¶ 7       In a follow-up interview on July 1, 2016, petitioner elaborated that Impact Behavior Health Partners was aware of his race and religion because he completed an intake form, which asked for his religion and included a headshot in his file. Petitioner acknowledged that he and his guests were being too loud on June 20, 2016. He stated Gallaher banged on his door, and, after he called Gallaher a "f***t," Gallaher started kicking the door. Petitioner's guests, Jones and Tucker, were ready to leave so petitioner opened the door, and was hit in the face with a tablet Gallaher threw. Petitioner's "friends held him back from doing anything to Gallaher."

¶ 8     Petitioner stated that he called Impact Behavior Health Partners at 11:00 a.m. and left a voicemail that "he was having a problem with the tenant in 611, and to please call him back." He also called his clinician, Vince, but did not reach him and did not leave a voicemail because Vince was on medical leave.[1] On June 21, 2016, petitioner saw the 10-day notice on his door but did not go to the office until the next day because it was after office hours. On June 22, 2016, petitioner was arrested after waiting 10-15 minutes in the office. An Evanston police detective informed him that Gallaher was "beat up bad," and had to go to the hospital, and Gallaher said petitioner did it. Petitioner was unaware of any other tenants that violated the terms of their lease agreement with Impact Behavior Health Partners.

¶ 9     Jones, petitioner's friend, was interviewed on July 28, 2016, and she stated that while she was "hanging out" at petitioner's apartment there was a constant knocking at the door. Petitioner told the person to get away from the door but the knocking continued. When petitioner opened the door, something was thrown at him. Jones identified the person who threw the object as a neighbor but did not provide a specific name. Petitioner was half in and half out of the door, and Jones pulled him in because they did not want any problems. She stated there was no physical altercation, although they did see the neighbor with his dog when they left the apartment.

¶ 10     Tucker, petitioner's friend, was also interviewed on July 28, 2016. He was at petitioner's home and they were playing music "kind of loud" when there was a knocking on the door. At first petitioner argued with Gallaher through the door, and then opened the door and stepped into the hall. Tucker heard them fighting but did not see it because the door closed behind petitioner.

---

[1] Vince's last name is not in the record.

¶ 11     Laura Lewison, Gallaher's clinician, was also interviewed and stated she received a text at 3:00 a.m. on June 20, 2016, from Gallaher that included pictures of him with injuries. Gallaher identified the resident of unit 609 as the assailant. Lewison went with Gallaher to the police station to file a report, where pictures of his injuries were taken. They then went to a hospital and Gallaher was released that afternoon. Gallaher has lived at the property for about 2 years with no problems or any lease violations.

¶ 12     A department investigator also interviewed Eric Lindstrom, Chief Operating Officer for Impact Behavior Health Partners. Lindstrom stated that on June 21, 2016, he was informed by Lewison that she received a picture of Gallaher's bruised and swollen face. Lewison informed Lindstrom that Gallaher stated the person in unit 609, petitioner's unit, was the assailant. Lindstrom and Lewison visited Gallaher in the morning. As they did, they could hear music coming from petitioner's apartment. Lindstrom saw that Gallaher's face was scraped and bruised, and he had marks on his back, similar to fingernail marks. Gallaher is selective mute and transgender (prefers male pronouns). When asked if he wanted to press charges against petitioner, Gallaher said yes. Lindstrom and Lewison accompanied Gallaher to the police station. There, Gallaher was interviewed and a warrant was issued for petitioner's arrest.

¶ 13     Lindstrom posted a 10-day notice of lease termination on petitioner's door when petitioner did not answer the door. Additionally, Lindstrom prepared an incident report, which indicated that: Gallaher "had clearly been assaulted with fresh bruising, swelling and scrapes on and around his face;" Gallaher was placed in a hotel at his own request to ensure his safety as police searched for petitioner; and all parties were concerned that petitioner might retaliate once he knew charges had been filed. Lindstrom explained that Impact Behavior Health Partners will terminate a lease if

tenants violate the "zero tolerance" policy of no violence. He stated there had been previous grievances filed against petitioner when he lived at another property operated by Impact Behavior Health Partners. Also, an incident had previously occurred between petitioner and his former roommate Darin Johnson, who is black with an unknown religion, and that petitioner was moved to the subject property because petitioner felt unsafe after that incident.

¶ 14    Lindstrom stated that Gallaher was not given a lease violation "because he only tried to defend himself." Gallaher is approximately 5'4'' and 110 pounds, and there is a stark size difference between Gallaher and petitioner. Gallaher additionally never had any lease violations. Lindstrom stated the only other person to have a lease terminated due to the violence policy in the last two years was Johnson. Lindstrom explained that he was aware of petitioner's race but unaware of his religion, although there was a place to fill it out on the mental health form.

¶ 15    Mary Ellen Poole, Executive Director for Impact Behavior Health Partners, was interviewed and stated that she was told to call police if petitioner came to the office because police had not been able to locate him. On June 22, 2016, petitioner came to the office and she told him to wait. Then, she contacted police. She was in charge of deciding to send the lease termination letter and did so based on the police report and warrant for petitioner's arrest. Furthermore, Impact Behavior Health Partners spent $600.00 on a hotel for Gallaher because he did not feel safe. In a follow-up interview, she explained that Impact Behavior Health Partners learned that petitioner assaulted Gallaher based on the message they received from petitioner that he had been in an altercation with a neighbor, and Gallaher's identification of the room number of his assailant.

¶ 16    Petitioner had one more interview where he stated that there was "a big difference" in size between him and Gallaher. Petitioner is 6'4'' tall and 220 pounds, and Gallaher is about 5'4'' tall

and 110 pounds. Petitioner denied there being any violent incidents while at Impact Behavior Health Partners, but acknowledged that in 1998 he was charged with domestic battery.

¶ 17　The Department also received documents including the addendum to lease, Evanston Police Department's incident reports, petitioner's notice of lease violation, petitioner's 10-day notice of termination, and Lindstrom's incident report. Among the other exhibits considered by the Department were grievance forms filed against petitioner. One of the forms was filed by another tenant, who believed petitioner threatened physical harm after he heard petitioner state he "could shoot the fatty right from here." There were also notice of lease terminations for: Johnson based on lease violations on several occasions; and another previous tenant Kathleen Haske for lease violations that included "creating a fire hazard on several occasions; non-compliance with the guest policy; failed inspections; and failure to follow through with eviction prevention services."

¶ 18　The Department issued a determination, finding that Impact Behavior Health Partners was aware that petitioner is black, and Muslim, and a member of protected classes. However, documentation showed that other tenants leases were terminated for violation of Impact Behavior Health Partners' policies, and that they had a zero-tolerance policy for violence. The Department decided Impact Behavior Health Partners had a reasonable belief that petitioner assaulted Gallaher and issued a 10-day lease termination pursuant to their policy and not due to petitioner's race or religion. The Department dismissed petitioner's charge for lack of substantial evidence.

¶ 19　On November 9, 2016, petitioner filed a request for review with the Commission. In the request, he argued that there was an insufficient investigation of the violation. He additionally alleged Impact Behavior Health Partners treated another tenant differently where Calvin Brown,

who is black and non-Muslim, was accused of violence and convinced to withdraw from Impact Behavior Health Partners' program, but not given a 10-day lease termination.

¶ 20    On April 17, 2019, the Commission sustained the Department's dismissal of the petitioner's charge for lack of substantial evidence. The Commission found petitioner used Gallaher as a comparator to determine if there was discriminatory animus and that the circumstances confronting Impact Behavior Health Partners were not the same for petitioner and Gallaher:

> "Gallaher presented with visible physical injuries he claimed were caused by the Petitioner, which necessarily prompted [Impact Behavior Health Partners] to act under its zero-tolerance policy. The Petitioner left [Impact Behavior Health Partners] a voicemail that did not identify what incident had occurred, or with whom. A reasonable inference of discrimination cannot be drawn from the comparison. Nor did the Petitioner point to any other non-black, non-Muslim tenants, who were accused of violent behavior but were not evicted."

Consequently, the Commission sustained the Department's dismissal of both counts of petitioner's charge.

¶ 21    On May 15, 2019, petitioner filed a timely petition for direct review of the Commission's decision in this court. See Ill. S. Ct. R. 335(a) (eff. July 1, 2017); 775 ILCS 5/8-111(B)(1) (West 2016) (After the Commission has entered a final order, a complainant may obtain judicial review by filing a petition for review in the Appellate Court within 35 days of the decision.).

¶ 22    On appeal, petitioner argues that he experienced housing discrimination when he received an eviction notice and Gallaher, Johnson, and Brown did not. He asserts that Impact Behavioral

Health Partners did not conduct a proper investigation before issuing the eviction notice, and that Impact Behavioral Health Partners did not adhere to its zero-tolerance policy in regard to other tenants.

¶ 23    As a preliminary matter, we note that petitioner's appellate brief fails to comply with Illinois Supreme Court Rule 341 (eff. May 25, 2018), which governs the contents of briefs and requires an appellant's arguments to be supported with citations to relevant legal authority and portions of the record. Without outlining the numerous shortcomings of petitioner's brief, we briefly point out that his brief fails to comply with Rule 341(h) because it does not include a statement of the issues presented for review, a statement of jurisdiction, a section detailing the statutes involved, a statement of facts that references pages of the record, and an argument section that cites to pertinent legal authority. See *Gandy v. Kimbrough*, 406 Ill. App. 3d 867, 875 (2010) (this court is not a depository in which the burden of argument and research may be dumped).

¶ 24    Petitioner's *pro se* status does not relieve him of the responsibility to comply with the appellate procedures established by our supreme court. *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 7. Accordingly, we may dismiss an appeal when it "fails to comply with the requirements of Rule 341." *Zale v. Moraine Valley Community College*, 2019 IL App (1st) 190197, ¶ 32. However, we will address petitioner's arguments here because we have the benefit of a cogent brief from the opposing party and it is clear that petitioner challenges the Commission's final order. See *Stolfo v. KinderCare Learning Centers, Inc.*, 2016 IL App (1st) 142396, ¶ 19.

¶ 25    A case under the Act begins when an aggrieved party files a charge in writing with the Department. 775 ILCS 5/7A-102(A)(1) (West 2016). The Department will then investigate to determine if the allegations in the charge are supported by substantial evidence. *Id.* § 7A-

102(C)(1). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id.* § 7A-102(D)(2). If the Department determines that there is no substantial evidence, the charge will be dismissed. *Id.* § 7A-102(D)(3). The complainant may then file a request for review with the Commission. *Id.*

¶ 26    "When a request for review is properly filed, the Commission may consider the Department's report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the Department in response to the request." *Id.* § 8-103(B). After the Commission has entered a final order, a complainant may obtain judicial review by filing a petition for review in the Appellate Court within 35 days of the decision. *Id.* § 8-111(B)(1).

¶ 27    We review the Commission's order under an abuse of discretion standard. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶¶ 31-33. "Under the abuse of discretion standard, the court should not disturb the Commission's decision unless it is arbitrary or capricious. [Citation.] A decision is arbitrary or capricious if it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." *Id.* ¶ 33. In applying this standard, this court will not "reweigh the evidence" or substitute our judgment for that of the Commission. *Id.* There is an abuse of discretion when no reasonable person could agree with the Commission's order. *Id.*

¶ 28    The Act declares that it is the public policy of Illinois to secure for all individuals freedom from discrimination on the basis of race and religion, in connection with "real estate transactions." 775 ILCS 5/1-102(A) (West 2016). It is a civil rights violation to alter the terms of a real estate

transaction or in the furnishing of facilities or services in connection therewith because of discrimination on the basis of race or religion. 775 ILCS 5/3-102 (West Supp. 2015); 775 ILCS 5/1-103(Q) (West 2016). The petitioner may prove discrimination through indirect evidence by showing by a preponderance of the evidence a *prima facie* case of unlawful discrimination. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 918-19 (2010). If the petitioner is successful, then the respondent has to put forth a legitimate, non-discriminatory reason for its actions. *Id.* at 919. If the respondent does provide this answer, then the petitioner must prove by a preponderance of the evidence that the answer offered by the respondent is not its true reason and is a "pretext for discrimination." *Id.*

¶ 29    A *prima facie* case of housing discrimination requires proof that "1) the petitioner is a member of a protected group; 2) the petitioner applied for an opportunity and was qualified for the opportunity; 3) the opportunity was denied to the petitioner; and 4) after the opportunity was denied, the opportunity was offered to others not in the protected group." *Turner v. Human Rights Comm'n*, 177 Ill. App. 3d 476, 487 (1988). These elements are not inflexible as the facts will, as a matter of course, vary in different cases. *Turner*, 177 Ill. App. 3d at 488. See *Atkins v. City of Chicago Comm'n on Human Relations ex rel. Lawrence*, 281 Ill. App. 3d 1066, 1074 (1996) (holding a *prima facie* case of housing discrimination in the context of rejection of rental application includes proof that petitioner was a minority, respondent was aware of this, petitioner was "ready and able to accept respondent's offer to rent," and respondent did not deal with petitioner) (quoting *Hsu v. Human Rights Comm'n*, 180 Ill. App. 3d 949, 953 (1989)).

¶ 30    With these factors in mind we consider the Commission's dismissal of petitioner's complaint to determine if it was arbitrary and capricious. For the following reasons, we find that it was not.

¶ 31    Petitioner has failed to meet his burden and make a *prima facie* case against Impact Behavior Health Partners. Although petitioner is a member of the protected class and a tenant of Impact Behavioral Health Partners, he did not meet his burden to show that he was qualified for the opportunity to remain as tenant where the accusations of violent behavior involving Gallaher, and his threats of violence against other tenants made him unqualified. The record shows that Impact Behavior Health Partners has a zero-tolerance policy towards violence and had information that petitioner violated this policy. Gallaher presented with injuries he said were caused by the tenant of 609, petitioner's apartment. Petitioner had also been the recipient of past complaints involving a threat of violence. Given this evidence, petitioner was not qualified to remain as tenant and thus did not meet the second factor to establish a *prima facie* case of discrimination. Accordingly, the Commission did not abuse its discretion in sustaining the Department's dismissal of both counts of petitioner's charge.

¶ 32    In reaching this conclusion, we are not persuaded by petitioner's argument that, although the lease agreement prohibits violence, the zero-tolerance policy was not actually used by Impact Behavior Health Partners in concern to Gallaher, Brown, and Johnson. Consequently, he argues it was discrimination and not his violation of any policy that caused Impact Behavior Health Partners to send him a 10-day lease termination notice without investigation.

¶ 33    Lindstrom explained Gallaher was not given a lease violation because Impact Behavior Health Partners concluded that he only tried to defend himself. The Commission found that

discrimination could not be found where Gallaher had physical injuries which he claimed were caused by petitioner. The Commission noted that petitioner, in complaining of the incident, did not identify what had occurred or with whom. As for Brown, it is not surprising that he was not issued a lease notice termination given that he elected to voluntarily withdraw from residency. There is no indication in the record that petitioner similarly elected to withdraw from residency and was denied by Impact Behavior Health Partners. Finally, Lindstrom stated that Johnson did have his lease terminated for violent actions.

¶ 34    For the above reasons, we conclude that the Commission did not abuse its discretion in sustaining the dismissal of petitioner's complaint.

¶ 35    Affirmed.