2020 IL App (1st) 191302-U
No. 1-19-1302
Order filed July 20, 2020

First Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DAVID MICHEL, | ) | |
| | ) | |
| | ) | Appeal from the |
| Petitioner-Appellant, | ) | Illinois Human Rights |
| | ) | Commission |
| v. | ) | |
| | ) | |
| THE STATE OF ILLINOIS HUMAN RIGHTS | ) | |
| COMMISSION, THE STATE OF ILLINOIS | ) | Charge Nos. 16 CF 2454, 16 CF |
| DEPARTMENT OF HUMAN | ) | 2949 |
| RIGHTS, and MV | ) | |
| TRANSPORTATION, INC., | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE HYMAN delivered the judgment of the court.
Justices Pierce and Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*: The Illinois Human Rights Commission did not abuse its discretion in sustaining the dismissal of petitioner's charges against his employer of harassment based on national origin and retaliation for filing prior discrimination charges.

¶ 2     David Michel, born in Haiti, filed three discrimination charges with the Illinois Department of Human Rights alleging his employer, MV Transportation, Inc., subjected him to harassment based on his national origin and to retaliate for earlier discrimination charges. Michel, a bus driver, alleges he was harassed and retaliated against by dispatchers who failed to answer his radio calls

and by his supervisor who delayed giving him a full attendance and safety bonus. The Department dismissed the charges for lack of substantial evidence.

¶ 3         Michel asked the Illinois Human Rights Commission to review the dismissals and to either consolidate his requests for review or have the same panel hear them. The Commission agreed that the same panel would review the requests. After review, the Commission issued three separate orders sustaining the dismissals.

¶ 4         Michel filed a *pro se* petition in this court for direct administrative review. The petitions were timely as to two of the dismissals, so we limit our review to them. Michel contends the Commission abused its discretion by (i) sustaining the dismissal of his claim that the dispatchers' conduct constituted harassment or retaliation, (ii) sustaining the dismissal of his claim that he was denied a bonus due to harassment and retaliation, (iii) failing to properly consolidate his charges, and (iv) failing to consider MV Transportation's credibility. We affirm the dismissals. The Commission did not abuse its discretion in finding that Michel failed to establish a *prima facie* case of harassment or retaliation. In the absence of a *prima facie* case of discrimination, MV Transportation's credibility in refuting the charges was irrelevant and need not be considered by the Commission. Further, Michel failed to present evidence that the Commission did not abide by its order that the three charges would be decided by the same panel.

¶ 5                                        Background

¶ 6         Michel began working as a coach bus driver for MV Transportation, Inc., on February 1, 2014. In January 2016, Michel filed a discrimination charge with the Equal Employment Opportunity Commission alleging MV Transportation discriminated against him based on his national origin. The charge was transferred to the Department of Human Rights, which dismissed it for lack of substantial evidence. (This charge is not before the court.)

¶ 7                                May 2016 Discrimination Charge

¶ 8         In May 2016, Michel filed another charge of discrimination with the Department claiming that from December 2015 through April 2016, MV Transportation subjected him to harassment because of his national origin in violation of section 2-102(A) of the Illinois Human Rights Act (775 ILCS 5/2-102(A) (West 2018) (Act)) and in retaliation for his January 2016 discrimination charge in violation of section 6-101(A) of the Act. 775 ILCS 6-101(A) (West 2018). Michel said he was harassed by dispatchers who ignored his calls on multiple occasions and once told him not to call that radio. Michel believed his co-workers knew he was Haitian because of his accent and knew that he had filed a discrimination charge in January 2016, because he heard another employee talking about it. Michel alleged that similarly situated non-Haitian drivers were not subject to this harassment, which he contended created a hostile and offensive work environment that interfered with his ability to do his job. Michel also alleged his employer improperly denied him part of a $250 safety and attendance bonus because he is Haitian and in retaliation for the January 2016 discrimination charge.

¶ 9         The Department investigated Michel's charges and recommended a finding of lack of substantial evidence. The investigator concluded that Michel failed to show that non-Haitian employees were treated more favorably under similar circumstances, as they too complained about dispatchers not returning their calls. (MV Transportation submitted incident reports of other drivers complaining about dispatchers ignoring calls.) Michel also failed to show his employer was aware of his national origin, as an operations manager said that neither she nor the dispatchers knew that Michel was Haitian and his former supervisor said he did not know until Michel filed his first complaint alleging national origin discrimination.

¶ 10    The investigator also concluded that Michel failed to show his employer had any animus toward him for filing the January 2016 discrimination charges. The investigator found that after Michel filed his complaint, MV Transportation allowed him to view dispatch operations and assigned a dispatcher to call him every hour to check in. Two weeks later, Michel asked dispatch to stop calling him hourly, as he usually had nothing to report. The investigator also noted that Michel initially received $100 of the $250 safety and attendance bonus because his former supervisor thought Michel had missed a workday. Michel filed a grievance contending that the day he missed was a scheduled day off. Michel's former supervisor removed the absence and gave Michel the balance of the full bonus. The Department accepted the investigator's recommendation and dismissed the charge.

¶ 11                    June 2016 Discrimination Charge

¶ 12    On June 1, 2016, Michel filed a third charge of discrimination with the Department alleging that from April 2016 until June 2016, MV Transportation harassed him based on his national origin and in retaliation for filing previous discrimination charges with the Department in violation of sections 2-102(A) and 6-101(A) of the Act (775 ILCS 5/2-102(A), 6-601(A) (West 2018)). Michel again alleged he was harassed when dispatchers failed to answer his radio calls and listed five instances when his calls were not returned. He asserted non-Haitian drivers' calls were returned, though he acknowledged hearing other drivers complain that dispatch did not return their calls.

¶ 13    The Department investigated the charge and again recommended dismissal. According to the investigation report, Michel's supervisor said he was unaware of Michel's national origin. The supervisor also said that other non-Haitian drivers complained about dispatchers not returning their calls. He asserted the problem was due to lack of professionalism by the dispatchers but that the

employer hired "a new team of dispatchers" that should ensure timely communication. The Department accepted the investigator's recommendation and dismissed the charge.

¶ 14                                    Commission Dismissals

¶ 15       Michel asked the Commission to review the Department's dismissals of his January, May, and June 2016 discrimination charges. He also filed a motion with the Commission to have his then-pending requests for review on his three charges either consolidated or reviewed by the same panel. The Commission granted Michel's motion, and ordered that the charges "shall by reviewed by the same Commission panel."

¶ 16       The Commission issued an order on April 30, 2019, sustaining the Department's dismissal of Michel's January 2016 charge for lack of substantial evidence. The Commission then issued two orders on June 6, 2019, sustaining the Department's dismissal of Michel's May 2016 and June 2016 charges for lack of substantial evidence. (The June 6 orders were issued by the same three commissioners. Two of those three commissioners also issued the April 30 order.)

¶ 17       As to the May 2016 charge, the Commission found the evidence not enough to establish a *prima facie* case of harassment or retaliation. Dispatchers' failure to answer Michel's calls was "not [sufficiently] severe or pervasive to constitute a term or condition of employment," and thus not actionable. Also, "there was no evidence that the "alleged harassment was due to the Petitioner's protected class or in retaliation." As for the partial denial of the safety and attendance bonus, the Commission likewise found insufficient evidence for a *prima facie* case of discrimination or retaliation, noting that no adverse action occurred, and that Michel "did not suffer a harm because ultimately the Employer paid him his full bonus."

¶ 18       As to the June 2016 charge, the Commission also sustained the Department's dismissal for lack of sufficient evidence to establish a *prima facie* case of harassment. The Commission found

that Michel's allegations that dispatchers did not respond to his calls "job-related and trivial," and not actionable, because they were not sufficiently "severe or pervasive to constitute a term or condition of employment." Nor did Michel present substantial evidence showing the alleged harassment to be due to his protected national origin or undertaken in retaliation for previously filing discrimination charges, as drivers who were not Haitian and had not filed discrimination charges also complained that dispatchers failed to answer their calls.

¶ 19        Michel filed a timely *pro se* petition in this court for direct administrative review of the Commission's June 9, 2019 final orders. He also asked the court to review the Commission's April 30, 2019 order dismissing his January 2016 charge, even though it was filed more than 35 days after entry of that order. See Sup. Ct. R. 335(a) (July 1, 2017). We issued an order in August 2019, denying that request for lack of jurisdiction and limiting our review to the Commission's two June 6, 2019 orders.

¶ 20                                   Analysis

¶ 21                             Standard of Review

¶ 22        The Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.* (West 2018)) prohibits discrimination against a person on the basis of national origin. *Id.* § 1-102(A). Under the Act, once a charge of discrimination is filed, the Department must conduct a full investigation of the allegations and prepare a written report. 775 ILCS 5/7A-102(C)(1), (D)(1) (West 2018), *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 917 (2010). The Department then reviews the report to determine whether "substantial evidence" exists that the alleged discrimination has occurred. 775 ILCS 5/7A-102(D)(2) (West 2018); *Owens*, 403 Ill. App. 3d at 917. "Substantial evidence," as defined by the Act, is "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be

somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2018); see *Owens*, 403 Ill. App. 3d at 917. If the Department determines that no substantial evidence supports the allegation, the charge is dismissed. 775 ILCS 5/7A-102(D)(3) (West 2018); *Owens*, 403 Ill. App. 3d at 917. The complainant may then seek the dismissal's review by the Commission. 775 ILCS 5/7A-102(D)(2)(a) (West 2018). If the Commission sustains the dismissal, the complainant may seek review of the Commission's order in this court. 775 ILCS 5/8-111(B)(1) (West 2018); *Allen v. Lieberman*, 359 Ill. App. 3d 1170, 1180 (2005).

¶ 23   This court reviews the decision of the Commission, not the Department. See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The Commission's findings of fact are entitled to deference and "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2018); see *Stone v. Department of Human Rights*, 299 Ill. App. 3d 306, 314 (1998). The Commission's decision to sustain the dismissal of a charge will be reversed only where the decision was arbitrary and capricious or an abuse of discretion. *Owens*, 403 Ill. App. 3d at 917. An arbitrary and capricious decision contravenes legislative intent, fails to consider a critical aspect of the matter, or offers an explanation so implausible that it cannot be considered as a result of the exercise of the agency's expertise. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 33. An abuse of discretion will be found where no reasonable person could agree with the decision of the Commission. *Id*.

¶ 24   In evaluating charges of discriminatory practices brought under the Act (775 ILCS 5/1-101 *et seq*. (West 2018)), the Department of Human Rights and the courts have adopted the three-part test employed by the federal courts in actions for employment discrimination brought under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq*. (1982)), as articulated by the United

States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Zaderaka,* 131 Ill.2d at 178-79. Under this test, the petitioner must first establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination. *Zaderaka*, 131 Ill.2d at 179-80. If a *prima facie* case is established, a rebuttable presumption arises that the employer unlawfully discriminated against the petitioner. *Id*. at 178-79. To rebut the presumption, the employer must articulate, not prove, a legitimate, nondiscriminatory reason for its decision. *Id*. at 179. If the employer articulates a legitimate reason, the petitioner must prove, again by a preponderance of the evidence, that the employer's reason was untrue and was a pretext for discrimination. *Id*. Under this test, the ultimate burden of persuasion remains on the petitioner throughout the proceeding. *Id*.

¶ 25        To establish a *prima facie* case of employment discrimination, the petitioner must show (i) he or she is a member of a protected class; (ii) he or she was meeting the employer's legitimate business expectations; (iii) he or she suffered an adverse employment action; and (iv) the employer treated similarly situated employees outside the class more favorably. *Owens v. Department of Human Rights*, 356 Ill. App. 3d 46, 52 (2005).

¶ 26                                            Harassment

¶ 27        Michel contends the Commission erred in finding he failed to establish a *prima facie* case of harassment based on his national origin when dispatchers failed to answer his calls.

¶ 28        A civil rights violation arises when an employer "engage[s] in harassment *** on the basis of unlawful discrimination or citizenship status. An employer is responsible for harassment by the employer's nonmanagerial and nonsupervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures." 775 ILCS 5/2-102(A) (West 2018). "Harassment" means unwelcome conduct on the basis of an individual's actual or perceived ***

national origin \*\*\* that has the purpose or effect of substantially interfering with the individual's work performance or creating an intimidating, hostile, or offensive working environment. \*\*\* 775 5/2-101(E-1) (West 2018).

¶ 29    For a claim of harassment to be actionable, the aggrieved employee must present evidence that the employer's behavior attained a severity or pervasiveness enough to alter the conditions of the employee's employment and create a hostile and abusive work environment. *Cook County Sheriff's Office v. Cook County Comm'n on Human Rights*, 2016 IL App (1st) 150718, ¶ 32. The employee also must show that he or she subjectively perceived the employer's behavior as hostile or abusive. *Id.* In determining whether these elements have been met, several factors should be considered, including: " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Id.* (quoting *Harris*, 510 U.S. at 22-23). "[T]he 'mere utterance of an \*\*\* epithet which engenders offensive feelings' is insufficient to constitute harassment." *Id.* (quoting *Harris*, 510 U.S. at 21-22).

¶ 30    Michel alleged he was harassed by dispatchers who failed to respond to his radio calls. The record supports Michel's allegations that on numerous occasions, dispatchers failed to answer his calls or delayed in responding to him. Michel was not alone. Non-Haitian drivers made similar complaints about dispatchers. Michel supplied no evidence showing that dispatchers' non-responsiveness had a connection to his national origin. An operations manager for MV Transportation said that neither she nor the dispatchers knew Michel was Haitian. Nor did Michel present evidence showing that when he did communicate with dispatchers or other employees, they said or did anything threatening, humiliating, or offensive to him based on his national origin. His exchanges with dispatchers did not involve anything other than passenger or vehicle matters.

¶ 31    Moreover, Michel failed to present evidence showing the alleged harassing conduct reached a severity or pervasiveness that altered the conditions of his employment and created a hostile or abusive working environment. The Department investigated multiple incidents between December 2015 and June 2016, when Michel deemed the dispatcher response unsatisfactory. Even if, as Michel alleges, dispatchers failed to respond to his calls on numerous occasions, this cannot be deemed pervasive harassing conduct.

¶ 32    MV Transportation acknowledged a problem with its dispatch system, because dispatchers lacked professionalism or left radios untended. They said they took steps to fix it. Though no doubt frustrating to Michel, the conduct was not exclusive to him nor did it prevent him from continuing to do his job. Thus, the Commission's determination that Michel failed to establish a *prima facie* case of harassment based on national origin was not against the manifest weight of the evidence and it did not abuse its discretion in affirming the Department's dismissals.

¶ 33                                     Retaliation

¶ 34    We likewise conclude the Commission did not abuse its discretion by finding Michel failed to establish a *prima facie* case of retaliation. A violation arises when the employer "[r]etaliate[s] against a person *** because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under [the] Act." 775 ILCS 5/6-101(A) (West 2018). A *prima facie* case of retaliation is established by showing that (i) the petitioner engaged in a protected activity, (ii) the employer committed an adverse act against the petitioner, and (iii) a causal connection existed between the protected activity and the adverse act. *Stone*, 299 Ill. App. 3d at 315 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802.

¶ 35    The evidence did not support a *prima facie* case of retaliation. Michel failed to establish his employer engaged in an adverse act against him. As noted, Michel was not the only employee

to complain about dispatchers not answering calls. Rather than specific to Michel, the problem appears systemic. Further, Michel failed to present evidence showing dispatchers ignored his calls because he had filed a discrimination charge. Absent evidence that the dispatchers conduct amounted to a materially adverse action or was motivated by retaliatory animus, the Commission did not abuse its discretion in finding that Michel failed to present a *prima facie* case. We affirm the Commission's decisions sustaining the dismissals of his retaliation claims.

¶ 36                                                    Bonus

¶ 37        Michel contends the Commission abused its discretion in finding he failed to present a *prima facie* case of national origin discrimination and retaliation when MV Transportation denied him a full safety and attendance bonus.

¶ 38        As noted, to establish a violation based on an employer's unlawful discrimination or retaliation, the employee must show he or she suffered an adverse act. *Owens*, 403 Ill. App. 3d at 919; *Stone*, 299 Ill. App. 3d at 315. Michel was not subject to an adverse act because, contrary to his contention, he was not denied the bonus. Rather, the bonus was delayed as his employer investigated whether he had missed a day of work that would have reduced the amount. When his supervisor determined that Michel had not missed a day, he received the full amount. The Commission did not abuse its discretion. See *Young*, 2012 IL App (1st) 112204, ¶ 39 (Commission did not abuse discretion in finding no adverse action where alleged denial of overtime hours not result in financial loss to employee). No evidence supports a finding that part of Michel's bonus was delayed due to his Haitian nationality, or animosity for filing a discrimination claim.

¶ 39                                                  Credibility

¶ 40        Michel next argues the Commission erred by failing to consider MV Transportation's credibility. Specifically, he asserts that in his requests for review, he identified multiple

contradictions and false or unsupported statements by MV Transportation managers that support a finding that their testimony is "taint[ed]" and "unqualified [as] rebut[tal]." Michel contends that despite identifying falsehoods that cast doubt on MV Transportation's credibility, the Commission did not address credibility in either of its June 6 orders.

¶ 41    As noted, under the three-part test used in evaluating charges of discriminatory practices brought under the Act, the petitioner must first establish, by a preponderance of the evidence, a *prima facie* case of unlawful discrimination. *Zaderaka*, 131 Ill.2d at 179-80. Only then must the employer articulate a legitimate, nondiscriminatory reason for its actions. *Id*. at 179. The Commission found that Michel failed to establish a *prima facie* case of harassment because, even accepting all of his allegations as true, the dispatchers' failure to answer his calls was not so severe or pervasive as to constitute a term or condition of his employment. Further, Michel was not denied his safety and attendance bonus, so he was unable to show any adverse action by his employer. Accordingly, Michel was unable to establish a *prima facie* case of harassment or retaliation. MV Transportation's credibility in refuting the allegations was irrelevant and the Commission did not commit reversible error by not addressing it.

¶ 42                            Consolidation of Charges

¶ 43    Michel contends the Commission ignored its own order to consolidate his three charges. Specifically, he notes that the Commission issued three separate orders—one on April 30, 2019 and two on June 6, 2019—which do not reference each other and were not decided by the same three commissioners. He contends that because the Commission ignored its own order, the June 6, 2019 orders are "tainted by prejudice" and asks us to vacate them and remand so that the Commission can consolidate the charges.

¶ 44        We note that Michel mischaracterizes the Commission's March 13 order. The Commission did not agree to consolidate his charges, but agreed they would be reviewed by the same panel. That the three orders were separately issued and do not reference each other is of no import.

¶ 45        Further, Michel presents no evidence showing his charges were not reviewed by the same panel. The Commission has two panels—Panel A and Panel B. Each has three commissioners. https://www2.illinois.gov/sites/ihrc/about/Meetings/Pages/default.aspx (visited July 1, 2020). The panel members can change when a commissioner leaves the Commission, but the panel—whether Panel A or Panel B—remains the same. The two June 9, 2019 orders were decided by the same three panel members. The April 30, 2019 order was decided by two of the three same panel members that decided the June 9, 2019 orders. That one panel member changed between April and June is not evidence that a different panel, whether Panel A or Panel B, reviewed the charge.

¶ 46        Moreover, without a showing to the contrary, we presume state administrators " 'are assumed to be [individuals] of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' " *Arvia v. Madigan*, 209 Ill. 2d 520, 541 (2004) (quoting *United States v. Morgan*, 313 U.S. 409, 421 (1941) ("we will not presume, as plaintiff does, that the Secretary of State's hearing officers are necessarily biased")). As noted, the ultimate burden of persuasion remains on Michel, the petitioner, throughout the proceeding. *Zaderaka*, 131 Ill.2d at 179. Absent evidence that the Commission ignored its order to have the same panel decided all three charges or was otherwise biased, we find no basis for vacating the June 6, 2019 orders affirming the dismissals of his charges.

¶ 47        Affirmed.