2020 IL App (1st) 191601-U

No. 1-19-1601

Order filed July 28, 2020.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| SUZIE T. LEWIS, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission. |
| v. | ) | |
| | ) | |
| THE ILLINOIS HUMAN RIGHTS COMMISSION; THE | ) | No. 2016 CR 3416 |
| ILLINOIS DEPARTMENT OF HUMAN RIGHTS; and | ) | |
| MANAGEMENT & TRAINING CORPORATION, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The Illinois Human Rights Commission did not abuse its discretion by sustaining the dismissal of petitioner's claims of employment discrimination and retaliation for lack of substantial evidence.

¶ 2    Petitioner Suzie T. Lewis appeals *pro se* from a final order entered by the Illinois Human

Rights Commission (Commission) sustaining the Illinois Department of Human Rights'

(Department) dismissal of her charge of employment discrimination and unlawful retaliation by her former employer, Management & Training Corporation (Management), brought under the Illinois Human Rights Act (Act) (775 ILCS 5/1-101, *et seq.* (West 2016)). Petitioner alleged Management discharged her due to her sex and pregnancy. She also alleged she was discharged in retaliation for engaging in a protected activity, seeking a leave of absence due to her pregnancy. The Department dismissed her charge for lack of substantial evidence. The Commission sustained the Department's decision and petitioner appealed. We affirm.

¶ 3       Management hired petitioner on October 6, 2014. After Management terminated her employment on March 22, 2016, petitioner filed a charge of employment discrimination and retaliation with the Department. She alleged she was discharged due to discrimination based on her sex and pregnancy, and in retaliation for engaging in a protected activity. Petitioner alleged she informed Management she was pregnant and requested Family Medical and Leave Act (FMLA) benefits and, on that same day, Management discharged her.

¶ 4       Petitioner's charge was investigated by the Department. Before preparing its report, the investigator for the Department interviewed petitioner; Maria Alday, Management's student records manager; and Katina Figueroa, Management's human resources generalist.

¶ 5       Petitioner told the investigator she worked for Management first as an on-call substitute teacher and later an academic instructor. Her job responsibilities included teaching upper-level math classes for students between the ages of 16 to 25. Petitioner asserted "her overall work performance was exceptional and she exceeded [Management's] job expectations."

¶ 6       Petitioner stated that, on March 22, 2016, she informed Figueroa of her pregnancy and submitted FMLA paperwork to request time off. After contacting her insurance company,

petitioner returned to human resources to tell them the claim had been approved. She informed Alday she wanted to request a medical leave. Alday signed her request and told her nothing else was needed at that time. Later that day, Alday called petitioner to human resources and "informed her she was being terminated due to breaching her 90-day probationary period and that she did not owe her a reason for the discharge." Petitioner was unaware she was on probation at the time.

¶ 7    Regarding her retaliation claim, petitioner told the investigator that, during a meeting in the summer of 2015, she engaged in a protected activity when she offered suggestions regarding class schedules. She also engaged in a protected activity on March 22, 2016, "when she requested an accommodation after requesting to take a leave of absence." Petitioner claimed that, as Management discharged her that same day, this adverse action "within such a period of time" raised an inference of retaliatory motive. At no time during her employment did petitioner report or otherwise allege any form of unlawful discrimination.

¶ 8    Alday told the investigator petitioner was hired as an on-call academic instructor and promoted to an academic instructor. Her overall work performance was good until an incident in which she used inappropriate language with students on March 22, 2016. On that day, petitioner requested a leave of absence and asked Alday to sign off on the request. She did not inform Alday of the reason for the leave. Another employee informed Alday petitioner was pregnant. Alday approved petitioner's request.

¶ 9    Later that day, several students came to Alday's office and complained that petitioner "was using profane language in the classroom." Alday requested petitioner come to human resources to receive her FMLA paperwork. While petitioner was in the human resources office, Alday went to petitioner's classroom and questioned the students about petitioner's behavior. The students

confirmed petitioner had used profane language. Alday asked petitioner to give a statement about the incident and give her FMLA paperwork to Figueroa. Alday told Figueroa that she found a substitute teacher to take over petitioner's classroom as she did not want petitioner in the classroom.

¶ 10    Alday told the investigator that "Human Resources along with the center Director made the decision to discharge petitioner based upon the incident with her use of inappropriate language with the students." That incident was already being investigated at the time petitioner submitted her FMLA paperwork. Petitioner's 90-day promotional probationary period had not yet ended. Alday stated that petitioner never made any complaints of discrimination prior to her discharge.

¶ 11    Figueroa told the investigator petitioner was hired as a substitute instructor on October 6, 2014, and was promoted to academic instructor on January 11, 2016. On March 22, 2016, petitioner told Figueroa she was pregnant. That day, Alday called Figueroa and informed her that petitioner had been using "profane language" in the classroom. Alday sent petitioner to Figueroa's office to make a statement. When petitioner arrived at Figueroa's office, she told Figueroa "it was best if she went on a leave of absence because she was pregnant." Figueroa gave petitioner a leave request form. Petitioner gave Figueroa a written statement about the classroom incident and left with the leave request form. An hour and a half later, petitioner returned to the office with the request signed by her manager. Alday signed petitioner's request form and "had [petitioner] add to her statement that she did not use profanity." Figueroa stated that, later that day, petitioner was called back to the office and discharged for failing to successfully complete her probationary period because she used profanity in the classroom.

¶ 12    Management provided the investigator with its Equal Opportunity/Affirmative Action Policy. The policy stated Management was committed to prohibiting discrimination on the basis of, *inter alia*, sex, and "no retaliation will be tolerated against any employee for reporting violations of this policy." Management also provided its Probationary Period Policy, which indicated that the staff probationary period was 180 days for all new hires and 90 days for staff who are promoted. During these probationary periods, Management's "usual disciplinary and problem solving procedures" applied and did not limit its ability to discipline or terminate employment prior to the end of the probationary period.

¶ 13    Management provided the investigator with petitioner's statement regarding the classroom incident, which indicated that the students refused to comply with petitioner's request that they put away their phones, refused to listen, and told petitioner she had a "f***** up attitude." Petitioner informed the students that she was "not going to come here and get treat like s*** when (she was) only try [*sic*] to help you with your math and get you to TABE of my class."

¶ 14    Management also provided its Rules of Conduct Policy, which outlines infractions that may result in immediate dismissal. Those infractions include "indecent obscene, abusive, profane, offensive, demeaning or suggestive comments, actions or behavior." Management's Employee Discipline Policy indicated that disciplinary actions, including termination, may be imposed for violation of company rules.

¶ 15    Management provided the investigator with "Notices of Caution" for several employees, Agustin J., Elayne H., Wesley P., Dawn C., and Naima N., whose employments were terminated in 2015 for various reasons, including failing to demonstrate professional behavior (Dawn C.).[1]

_____

[1]For privacy reasons, we do not use these former employees' full names. Agustin J. and Wesley P. were male and not engaging in a protected activity at the time of their discharges. Dawn C.'s pregnancy

¶ 16    In rebuttal, petitioner did not provide any further information.

¶ 17    The investigator recommended a finding of lack of substantial evidence that petitioner was discharged because of her pregnancy or sex, because she failed to identify a similarly situated non-pregnant employee who demonstrated unprofessional behavior but was not discharged. The evidence showed petitioner was discharged because, *inter alia*, she used profane language toward students in her classroom while still a probationary employee, an infraction which may result in immediate dismissal under Management's policy. Further, the evidence showed that between May 15, 2015, through November 18, 2015, Management terminated "at least five individuals not identified as being pregnant," including one for unprofessional behavior.

¶ 18    The investigator also recommended a finding of lack of substantial evidence that petitioner was discharged in retaliation for engaging in a protected activity, because she failed to establish a nexus between her involvement in a protected activity and her discharge. The evidence showed that, before petitioner requested an accommodation to take a leave of absence, two students had complained that she used profane language toward them and their classmates, a violation that could result in immediate dismissal. Petitioner further failed to show Management had an animus toward her for requesting an accommodation related to her pregnancy.

¶ 19    The Department subsequently dismissed petitioner's charge. Petitioner filed a request for review of the Department's decision with the Commission, attaching no additional evidence or argument to her request.

---

status was unknown and she was not engaging in a protected activity at the time of her discharge. Both Elayne H. and Naima N. were not known to be pregnant and were engaging in protected activities at the time of their discharges.

¶ 20    The Department responded that its investigation showed that Management's articulated nondiscriminatory reason for discharging petitioner on March 22, 2016, was because "she cursed at students." It pointed out that, in petitioner's written statement regarding the incident, she wrote "I am not going to come here and **get treat [sic] like s\*\*\*** when I am only try [sic] to help you with your math (emphasis added)" but later attached an addendum to her statement denying she cursed. The Department found that, based upon the statement of the complaining students and petitioner's initial admission that she cursed in front of her students, Management discharged her. The Department argued petitioner failed to establish a *prima facie* case for pregnancy or sex discrimination because no evidence was presented that Management failed to discharge a non-pregnant or male probationary co-worker who cursed at students.

¶ 21    The Department further argued petitioner failed to establish a *prima facie* case of retaliation, because she did not engage in a protected activity by applying for FMLA benefits. It also argued that, even if petitioner could establish a *prima facie* case of discrimination or retaliation, the Department's investigation revealed that Management articulated a nondiscriminatory and nonretaliatory reason for discharging petitioner: she cursed at students in her classroom. Petitioner failed to show Management's reason was a pretext for unlawful discrimination or provide any statements showing retaliatory animus by Management.

¶ 22    On July 10, 2019, the Commission issued its final administrative decision, sustaining the Department's dismissal of the charge for lack of substantial evidence. Regarding the discrimination claims, it found petitioner established that she was a member of a protected class, was performing her work satisfactorily, and was subject to adverse action. However, she could not establish that a similarly situated employee outside her protected classes was not discharged under

similar circumstances. Further, Management articulated a legitimate, nondiscriminatory reason for her discharge: her use of profanity in her classroom. The Commission found petitioner did not establish that this reason was a pretext for discrimination.

¶ 23    The Commission found petitioner did establish a *prima facie* case for retaliation because she requested a leave of absence to accommodate her pregnancy and was discharged the same day, which created an inference that petitioner was discharged because she made the request. The Commission then found Management not only articulated a legitimate, nondiscriminatory reason for the discharge but actually granted petitioner's request for a medical leave of absence, which rebutted the inference that Management took retaliatory action against her for making the leave request. The Commission also found petitioner did not provide any evidence that Management's reason for the discharge was a pretext for retaliation. It concluded petitioner did not present any evidence to show the Department's dismissal of the charge was not in accordance with the Act. On August 9, 2019, petitioner filed her petition for direct review of the Commission's decision in this court.

¶ 24    As an initial matter, we note that petitioner's appellate brief does not comply with Illinois Supreme Court Rule 341(h) (eff. May 25, 2018), which governs the content of appellate briefs.[2] For example, petitioner's brief does not contain any "Points and Authorities" statement, outlining the points argued and authorities cited in the Argument (see Rule 341(h)(1)), no statement of jurisdiction (see Rule 341 (h)(4)), and no argument supported by citations to the record or legal authority relied upon (see Rule 341(h)(7)). Instead, petitioner's brief consists solely of a lengthy factual recitation detailing her work history with Management and prior interactions with Alday.

---

[2]Petitioner did not file a reply brief.

We may strike a brief and dismiss the appeal for failure to comply with the supreme court rules. *Marzano v. Dept. of Emp't. Sec.*, 339 Ill. App. 3d 858, 861 (2003). However, we have the benefit of a cogent brief from the Commission and Department and so choose to reach the merits of the appeal.[3] See *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (reviewing the merits of the appeal despite the appellant's numerous violations of Supreme Court Rule 341(h)).

¶ 25    It is a civil rights violation under the Act to discharge an employee based on unlawful discrimination. 775 ILCS 5/2-102(A) (West 2016). Discrimination based upon an individual's sex or pregnancy is unlawful under the Act. 775 ILCS 5/1-102(A) (West 2016). Further, it is a civil rights violation to retaliate against a person because she "has requested, attempted to request, used, or attempted to use a reasonable accommodation as allowed by this Act." 775 ILCS 5/6-101(A) (West 2016).

¶ 26    Where a petitioner brings a charge under the Act, the Department shall conduct an investigation to determine whether the allegations are supported by substantial evidence. 775 ILCS 5/7A-102(C)(1) (West 2016). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2016). If the Department determines there is no substantial evidence supporting the charge, it shall dismiss the charge. 775 ILCS 5/7A-102(D)(3) (West 2016). The petitioner may then either commence a civil action in a circuit court or, as petitioner did here, file a request for review of the dismissal with the

---

[3]This court granted Management leave to adopt the appellate brief filed jointly by the Commission and Department.

Commission. 775 ILCS 5/7A-102(D)(3) (West 2016). A petitioner may seek direct review of a final order by the Commission directly with this court. 775 ILCS 5/8-111(B)(1) (West 2016).

¶ 27     We review a final order of the Commission for an abuse of discretion. 775 ILCS 5/8-111(B)(1) (West 2016); *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under this standard, the court should not disturb the Commission's decision unless it is arbitrary or capricious. *Young*, 2012 IL App (1st) 112204, ¶ 33. A decision is arbitrary or capricious if it contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an impossible explanation contrary to agency expertise. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 917 (2010).

¶ 28     Furthermore, we review the final order of the Commission, not the Department decision. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The Commission's findings of fact "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence. 775 ILCS 5/8-11(B)(2) (West 2016). A reviewing court may not reweigh the evidence or substitute its judgment for that of the Commission, and abuse of discretion will be found only where no reasonable person could agree with the position of the lower court. *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 29     In analyzing claims of employment discrimination under the Act, we are guided by federal case law relating to federal anti-discrimination statutes such as Title VII of the Civil Rights Act of 1964. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178 (1989). Petitioner has provided no direct evidence of discrimination, so we must analyze her claim using the three-part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Zaderaka*, 131 Ill. 2d at 178-79; *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). Under this

test, the petitioner has the initial burden to show a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34.

¶ 30    If the petitioner establishes a *prima facie* case of discrimination, a rebuttable presumption of unlawful discrimination arises. *Id*. ¶ 36. To rebut the presumption, the respondent must articulate a legitimate, nondiscriminatory reason for its decision. *Id*. If the respondent does so, the burden shifts back to the petitioner to prove the respondent's reason was a pretext for unlawful discrimination. *Id*. The ultimate burden, however, remains with the petitioner. *Zaderaka*, 131 Ill. 2d at 179.

¶ 31    Here, we find the Commission did not abuse its discretion in sustaining the Department's dismissal of petitioner's employment discrimination charge for lack of substantial evidence that petitioner was discharged due to her sex or pregnancy. To establish a *prima facie* case of employment discrimination under the Act, the employee bears the burden of showing, by a preponderance of the evidence, that (1) she is a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action; and that (4) the employer treated similarly situated employees outside the class more favorably. *Owens*, 403 Ill. App. 3d at 919. At that point, the burden shifts to the employer to articulate, not prove, a legitimate, nondiscriminatory reason for the adverse employment decision. *Zaderaka*, 131 Ill. 2d at 179. Finally, if the employer meets its burden, the employee must prove, by a preponderance of the evidence, that the employer's articulated reason was not legitimate and, in fact, was a pretext for unlawful discrimination. *Id*.

¶ 32    The Commission did not abuse its discretion in finding that petitioner failed to establish a *prima facie* case of employment discrimination based on her sex or pregnancy where she failed to

present evidence that similarly situated employees who were male or not pregnant were treated more favorably. To the contrary, the evidence before the Commission showed that Management discharged five other employees in 2005: two men and three women not known to be pregnant. Notably, Dawn C., a female employee not known to be pregnant, was discharged, as petitioner was, for failing to demonstrate professional behavior.

¶ 33    Further, even if petitioner had presented evidence to the Commission that other, non-pregnant or male employees demonstrated unprofessional behavior but were not discharged, Management articulated a legitimate, nondiscriminatory reason for petitioner's discharge: she used profanity in her classroom in violation of Management's policy. According to Management's Rules of Conduct and Employee Discipline Policy, any employee who makes profane comments may be subject to immediate dismissal. In petitioner's written statement to human resources, she initially admitted she made profane comments in her classroom to students. In fact, in her brief on appeal, she acknowledges that, on the date of the incident, she was frustrated with students' behavior in her classroom and told them "I don't have to take this s*** from you."

¶ 34    Petitioner did not present any evidence to the Commission that Management was motivated by discriminatory animus rather than adherence to its own policies when it discharged petitioner for using profane language in her classroom. She presented no evidence showing that Management's reason for the discharge was pretextual or that it had anything other than a good faith belief that, as the students reported and petitioner herself acknowledged, she used profanity toward her students. Accordingly, the Commission did not abuse its discretion in affirming the dismissal of the counts related to petitioner's discharge due to unlawful discrimination for lack of substantial evidence.

¶ 35    We also find the Commission did not abuse its discretion in finding that petitioner failed to establish Management retaliated against her for seeking a leave of absence due to her pregnancy. To establish a *prima facie* case of retaliation, the employee bears the burden of showing that (1) she was engaged in a protected activity; (2) her employer committed a material adverse action against her; and (3) a causal nexus existed between the protected activity and the adverse act. *Hoffelt v. Illinois Department of Human Rights*, 367 Ill. App. 3d 628, 634 (2006). A *prima facie* case of retaliatory discharge can be established by showing a short time span between engaging in a protected activity and the employer's adverse action. *Id*. at 638. When an employee establishes a *prima facie* case of retaliation, a rebuttable presumption of unlawful retaliation arises. *Id*.

¶ 36    To rebut the presumption, the employer must articulate a legitimate and nondiscriminatory reason for the action. *All Purpose Nursing Service v. Illinois Human Rights Comm'n*, 205 Ill. App. 3d 816, 827 (1990). If the employer articulates such a reason, the burden shifts back to the employee to prove, by a preponderance of the evidence, that the legitimate reasons offered by the defendant were merely a pretext for discrimination. *Id*. The employee may meet this burden by showing her employer's proffered reason is "unworthy of belief." *Id*.

¶ 37    As the Commission found, the fact that petitioner requested a leave of absence to accommodate her pregnancy and was discharged the same day creates an inference that she was discharged because she sought the leave of absence. Accordingly, she established a *prima facie* case of retaliation. See *Hoffelt*, 367 Ill. App. 3d at 634. However, as set forth above, Management articulated a legitimate, nondiscriminatory reason for her discharge, and petitioner presented no evidence that this reason was merely a pretext for retaliation and was "unworthy of belief." See *All Purpose Nursing Service*, 205 Ill. App. 3d at 827. Additionally, Management granted her

request for a leave of absence, which further serves to rebut the inference that it discharged her in retaliation for making the request. Accordingly, petitioner has failed to establish that her discharge was in retaliation for seeking a leave of absence to accommodate her pregnancy.

¶ 38    Petitioner asserts, *inter alia*, that she observed other staff and teachers, including Alday, use profanity toward students regularly without reprimand. She further asserts she had a tense relationship with Alday and was already "in mediation" with Alday regarding Alday harassing her in meetings. None of this information was apparently presented to the Department or Commission. Nor was the Commission presented with the additional evidence petitioner has attached as an appendix to her brief. We will not consider any issues on appeal not raised initially during the administrative proceeding. *Illinois Bell Telephone Co. v. Human Rights Comm'n*, 190 Ill App. 3d 1036, 1044-45 (1989). Nor will we consider documents that were not before the Commission and that are not part of the record on appeal. See *In re Estate of Matthews*, 409 Ill. App. 3d 780, 783 (2011) (noting that "the record on appeal cannot be supplemented by attaching documents to the appendix of a brief"); see also 735 ILCS 5/3-110 (West 2016) (stating that "[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court").

¶ 39    For the foregoing reasons, the Commission's July 10, 2019 order sustaining the Department's dismissal of petitioner's charge for lack of substantial evidence is affirmed.

¶ 40    Affirmed.